UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| Herbert Penn, *on behalf of himself and all others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>NRA Group, L.L.C.; and DOES 1-10, inclusive,<br><br>Defendants. | Civil Action No.: 1:13-cv-00785<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT** |

For this Second Amended Class Action Complaint, Plaintiff, Herbert Penn, by and through his undersigned counsel, pleading on his own behalf and on behalf of all others similarly situated, states as follows:

## INTRODUCTION

1. Plaintiff, Herbert Penn ("Plaintiff"), brings this class action for damages resulting from the illegal actions of NRA Group, L.L.C. ("NRA" or "Defendant"). Defendant negligently placed automated calls to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

## JURISDICTION

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740, 751-53 (2012).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Plaintiff resides within the District of Maryland, a substantial portion of the events or omissions giving rise to the case occurred in this District, and Defendant regularly conducts business in this District.

## PARTIES

4. Plaintiff is an adult individual residing in Baltimore, Maryland.

5. Defendant is a Pennsylvania business entity with an address of 2491 Paxton Street, Harrisburg, Pennsylvania 17111.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

6. The TCPA regulates, among other things, the use of automated telephone dialing systems.

7. 47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

>    (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
>    (B) to dial such numbers.

8. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

9. In or around October 2012, Defendant began placing automated calls to Plaintiff's cellular telephone.

10. During conversations with Defendant, Plaintiff requested that Defendant stop contacting him on his cellular phone.

11. Nonetheless, Defendant continued to place automated calls to Plaintiff's cellular telephone.

12. To date, Plaintiff has received approximately 22 automated calls from Defendant on his cellular telephone.

13. Plaintiff has never provided his cellular number to Defendant, nor has he ever consented to be contacted by Defendant on his cellular telephone.

14. However, Defendant routinely engages in "skip tracing" in order to locate debtors:

> To ensure that as many accounts as possible are liquidated, NRA performs skip tracing as appropriate to locate responsible parties whose whereabouts are unknown and to uncover employment and asset information. National Recovery Agency performs skip-tracing procedures on every account assigned for collection - regardless of balance and free of charge.

http://www.nragroup.com/skip.html.

15. Defendant obtained Plaintiff's cellular phone number through a skip trace.

16. In addition, Defendant admits that it employs an ATDS which meets the definition set forth in 47 U.S.C. § 227(a)(1):

> NRA utilizes a Mercury Predictive Dialer (MPD), which is a fully integrated, real-time, on-line predictive dialing system that works seamlessly with our collection database and blends both inbound and outbound contact activities. No competitive predictive dialer can provide anywhere near the system management efficiencies, comprehensive account management, or daily dialer operation convenience as MPD. With the dialing system, we have the flexibility to manage accounts and collector work patterns in a variety of ways. The automated dialer makes predictive dialing affordable and increases productivity, thereby increasing revenue for our clients. It allows us to handle more accounts without increasing costs.
>
> NRA utilizes the Pegasus Interactive Voice Response System which is an IVR that increases efficiency and decreases cost by automatically handling calls, as necessary. It provides automated "self-service" scripts, tailored specifically to your needs, in responding to incoming calls. The IVR offers a number of benefits that maximize NRA's total call center capabilities and provides a full service solution to our clients.

http://www.nragroup.com/technologysecurity.html.

17. A predictive dialer is an ATDS as defined by the TCPA.[1]

---

[1] *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14091-92 (July 3, 2003); *see also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd 559, 566-567 (Jan. 4, 2008).

18. Defendant's website further boasts:

NRA makes the first telephone contact attempt with the debtor immediately after the 30 day validation period. Our methodology emphasizes the use of scheduled campaigns during prime time and weekend hours that also provide for timely and effective follow up with debtors, in all time zones.

In order to achieve maximum penetration of accounts through telecommunications, NRA uses a dialing service to penetrate inventory in addition to its IVR technology. This service provides the following options:

- Automated telephone contact attempts that leave a professionally recorded message providing a NRA telephone number and a reference number of the debtor.

- Verification and transfer service that prompts the debtor to press "1" to verify their identity. The debtor is then connected to a live NRA agent.

http://www.nragroup.com/strategies.html.

19. Upon information and belief, each of the aforementioned calls to Plaintiff was placed using an ATDS.

20. The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

21. Defendant's calls to Plaintiff's cellular telephone were not for "emergency purposes."

## CLASS ACTION ALLEGATIONS

### A. The Class

22. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

23. Plaintiff's proposed Class is as follows, subject to amendment as appropriate:

**Class Definition. All persons within the United States who, at any time during the last four years, received one or more non-emergency telephone calls from NRA to a cellular telephone through the use of an ATDS, and who did not provide prior express consent for such calls.**

24. Excluded from the Class are all officers, directors, and employees of Defendant, together with those individuals' immediate family members, and their respective legal representatives, heirs, successors and assigns, the officers, directors and employees of any parent, subsidiary or affiliate of Defendant, together with those individuals' immediate family members, counsel for Defendant and Class counsel and their immediate family members, in addition to those whose claims are barred by the statute of limitations.

B. **Numerosity**

25. Upon information and belief, Defendant has placed calls using an ATDS to cellular telephone numbers belonging to thousands of consumers throughout the United States, without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

26. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

C. **Common Questions of Law and Fact**

27. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

   a. Whether Defendant made non-emergency calls to Plaintiff and Class members' cellular telephones using an ATDS;

   b. Whether Defendant can meet its burden of showing it obtained prior express consent to make each call;

   c. Whether Defendant's conduct was negligent;

d. Whether Defendant is liable for damages, and the amount of such damages; and

e. Whether Defendant should be enjoined from such conduct in the future.

28. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely places calls using an ATDS to telephone numbers assigned to cellular telephone services without prior express consent and not for emergency purposes is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

D. **Typicality**

29. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

E. **Protecting the Interests of the Class Members**

30. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

F. **Proceeding Via Class Action is Superior and Advisable**

31. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

32. Management of this class action is unlikely to present any difficulties. Several courts have certified classes in TCPA actions. These cases include, but are not limited to:

*Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

**COUNT I**
**Negligent Violations of the Telephone Consumer Protection Act,**
**47 U.S.C. § 227,** *et seq.*

33. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

34. Defendant negligently placed multiple automated calls to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express consent.

35. Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

36. As a result of Defendant's negligent violations of the TCPA, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

37. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B); and

3. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: June 26, 2013

        Respectfully submitted,

        By   */s/ Sergei Lemberg*
        Sergei Lemberg, Esq.
        LEMBERG & ASSOCIATES L.L.C.
        1100 Summer Street, 3rd Floor
        Stamford, CT 06905
        Telephone: (203) 653-2250
        Facsimile: (203) 653-3424
        *Attorneys for Plaintiff*