**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| HERBERT PENN | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) Case No. 1:13-CV-00785-JKB |
| | ) |
| NRA GROUP, LLC; | ) |
| AND DOES 1-10, inclusive | ) |
| | ) |
| Defendants | ) |
| | ) |

## DEFENDANT NRA GROUP, LLC'S REPLY BRIEF IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION

**I.      INTRODUCTION**

Plaintiff, Herbert Penn attempts to defeat summary judgment by avoiding the facts, and arguing that he was somehow surprised by Defendant's introduction of evidence that was consistent with its affirmative defenses and its discovery responses. He further misrepresents case law, cites language from cases out of context, and relies in large part on one outlier case that is currently on appeal to the 11th Circuit. In so doing, he ignores the express findings of the Federal Communications Commission ("FCC") that the provision of a cellular telephone number evidences consent to be contacted at that number, and that providing the number to a creditor is consent to be contacted by a debt collector working for the creditor. This is exactly what happened in this instance, and Defendant NRA Group, LLC ("NRA") is entitled to summary judgment.

## II. LEGAL ARGUMENT

### A. Ms. Sarver's Affidavit Should Not Be Stricken

As NRA has demonstrated in its Opposition to Plaintiff's Motion to Strike The Affidavit of Charlene Sarver (DE 48), which NRA incorporates herein by reference, NRA's failure to formally amend its discovery responses to list Ms. Sarver as a person "with knowledge of the issues in this case" was both substantially justified and harmless.

From the time NRA first answered his Telephone Consumer Protection Act ("TCPA") claim, Plaintiff has known the factual and legal basis of NRA's defenses. He has known (1) that NRA claimed it did not use an automatic telephone dialer system or "ATDS" to call Plaintiff's cellular telephone number, and (2) that even if it did, such calls were not a violation of the TCPA or the FCC's interpretation of the Act, because Mr. Penn had provided his cellular number to his creditor as part of the transaction giving rise the debt. (DE 16, ¶ 9 and First Affirmative Defense.) Further, Ms. Sarver's existence and her area of knowledge were disclosed to Plaintiff months before discovery closed. (DE 48, Exh. 1, ¶ 4, Exhs. A & B, thereto.)

Despite having knowledge of NRA's defenses and theories of the case, and despite having been provided with the names and titles of three NRA employees with knowledge of the issues in this matter, including Ms. Sarver, Plaintiff never attempted to depose *any* of the witnesses or learn more detail of the facts in this case. Having failed to act diligently, he should not now be heard to complain that he is surprised by NRA's consistent position. To strike Ms. Sarver's affidavit would elevate form over substance, and her affidavit should be considered.

**B. Plaintiff Will Not Be Able To Show that That The Mercury Dialer As Used By NRA To Call Mr. Penn's Cellular Telephone Is An ATDS, And Summary Judgment Should Be Granted in NRA's Favor**

As set forth in Defendant's Opening Brief, and as Plaintiff admits, it is Plaintiff's burden to prove that NRA called Plaintiff's cellular telephone using an ATDS. *See, e.g., Pugliese v. Professional Recovery Service, Inc.,* 2010 WL 2632562, *7 (E.D.Mich. June 19, 2010). On summary judgment "where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) "After the moving party has met its initial burden, the adverse party's response must, 'by affidavits or as otherwise provided in this rule [ ] set out specific facts showing a genuine issue for trial.' Fed.R.Civ.P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' *Celotex,* 477 U.S. at 322." *Dominguez v. YahooZ, Inc.*, 2014 WL 1096051, *3 (E.D.Pa. March 20, 2014). Here, Plaintiff has failed to make any factual showing sufficient to establish that NRA used an ATDS to call Plaintiff's cellular telephone, and summary judgment should be granted in Defendant's favor.

Plaintiff's broad citations to the dialer manual, (DE 44), do not create a genuine dispute as to whether the Mercury Dialer, as used in a specific campaign by NRA's collectors to place calls to Penn, was an ATDS. First, if Plaintiff is correct that Ms. Sarver's affidavit is expert testimony, then expert testimony would be needed to interpret the manual. Because neither party has an expert for trial, Plaintiff will be unable to carry his burden of proof to show NRA used an

ATDS to call Plaintiff's cellular number, and summary judgment should be granted in favor of NRA.

Second, assuming that the Court can determine the ATDS issue without the benefit of expert testimony, Plaintiff's reliance on the title or name of the Dialer is not dispositive. (DE 41, at 5 and DE 44 at DE00074.) Just because someone calls their rusted out Chevrolet a Maserati, does not make it a Maserati. Rather, it is necessary to look at the attributes of an ATDS or a "predicative dialer" as set forth in both the TDCA and the FCC's Rulings interpreting the Act, and determine whether a particular dialer has those attributes.

The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §227(a)(1)(A)-(B). Defendant has produced evidence that its dialer does not to store numbers at all, much less store or produce them using a random or sequential number generator. DE 38-6, ¶¶ 8-10. Plaintiff has come forward with no evidence to counter this assertion.[1] The fact that the dialer, *with certain add-on modules*, can store numbers, (DE 44, at DE000348-9) does not create a genuine dispute, because there is no evidence that NRA's dialer had this module. "To meet the TCPA definition of an 'automatic telephone dialing system,' a system must have a **present** capacity, at the time the calls were being made, to store or produce and call numbers from a number generator. While a defendant can be liable under §227(b)(1)(A) whenever it has such a system, even if it does not make use of the automatic dialing capability, it cannot be held liable if substantial modification or alteration of the system

---

[1] Plaintiff's claim that DE 38-6, ¶ 11, shows that the Mercury Dialer is a predictive dialer with the capacity to store, generate and call numbers is disingenuous, at best. (DE 41, at 9.) First, Plaintiff has filed a motion to strike the very evidence he cites. Second, the preceding paragraphs 8 through 10 clearly state that the dialer does not store or produce numbers, cannot randomly or sequentially generate numbers, and lacks the capacity to automatically calls numbers from a predetermined list. Third, the cited paragraph states that for it to have "present capacity to [do these things] would require modifications to both the hardware and software NRA used to contact Plaintiff."

would be required to achieve that capability." *Hunt v. 21st Mortg. Corp.*, 2013 WL 5230061, 4 (N.D.Ala. Sept. 17, 2013) (emphasis in original). Given rapidly changing technology, a "system's status under the TCPA [should be] based on the system's **present,** not **potential,** capacity to store, produce, or call randomly or sequentially generated telephone numbers." *Gragg v. Orange Cab Co., Inc.,* --- F.Supp.2d ---, 2014 WL 494862, *2 (W.D. Wash., Feb. 7, 2014) (emphasis in original).[2]

Even if Plaintiff's evidence did show that NRA's dialer had the capability to store numbers, it is not sufficient to defeat NRA's motion. Just a few weeks ago, the Eastern District of Pennsylvania granted summary judgment to Defendant Yahoo, where "Plaintiff has not offered any evidence to show that Yahoo's system had the capacity to randomly or sequentially generate telephone numbers (as opposed to simply storing telephone numbers), as required by the statutory definition of ATDS." *Dominguez v. YahooZ, Inc.,* 2014 WL 1096051, *6 (E.D.Pa.) (E.D.Pa. March 20, 2014). Even the case relied on by Plaintiff, noted that to be an ATDS a system must "***both*** store numbers and dial random or sequential numbers." *Sherman v. YahooA Inc.*, 2014 WL 369384, *7 (S.D.Cal. Feb. 3, 2014) (emphasis in original).

"Congress delegated to the FCC the authority to make rules and regulations to implement the TCPA. *See* 47 U.S.C. § 227(b)(2)." *Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772, *5 (M.D.Fla. Dec. 31, 2013). In 2003, the FCC, in noting that a predictive dialer is considered an ATDS, reiterated the TCPA's definition of an ATDS. *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14091-93 (July 3, 2003.) However, in further examining the issue, the FCC has emphasized that "the basic function of such equipment is the capacity to dial numbers *without human intervention.*" *In the*

---

[2] Plaintiff's own citation to the manual shows that the power dial mode is different and distinct from any predictive mode. *See, e.g.* DE 44, at DE00105; *see also* DE 44, at DE00079, DE00092 (definition of Power Dialing Mode) compared with DE00093 (definition of Predictive Dialing Mode).

5

*Matter of Rules & Regulations Implementing the TCPA of 1991,* 23 F.C.C.R. 559, 566 ¶ 14 (Jan. 4, 2008) (emphasis added.)

Numerous courts have found the ability/inability to dial numbers without human intervention to be dispositive of whether a dialer is an ATDS and subject to the TCPA. *See Gragg, supra,* at *3;[3] *Baranski v. NCO Financial Systems, Inc.* 2014 WL 1155304, *6 -*7 (E.D.N.Y. March 21, 2014) (granting motion to dismiss, and finding that testimony that a collector '"would hit a key on the computer, and it would autodial the telephone number,' . . . does not suggest that it had the capacity 'to dial such numbers' [or to] . . . support the inference that the calls could be made without human intervention"); *Echevvaria v. Diversified Consultants, Inc.* 2014 WL 929275, *6 (S.D.N.Y. Feb. 28, 2014) (finding dialer was an ATDS, because it "places the calls 'without human intervention'"); *Fields v. Mobile Messengers America, Inc.,* 2013 WL 6774076, *3 (N.D.Cal. Dec. 23, 2013) (noting that the emphasis should be on whether the equipment can dial numbers without human intervention); *Hicks v. Client Services, Inc.*, 2009 WL 2365637, *4-*5 (S.D.Fla. June 9, 2009) ( the "FCC defined [predictive dialers] as 'having the capacity to dial numbers without human intervention' and as 'equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. . .'")

Finally, as discussed in Defendant's Opening Brief (DE 38-1, at 8-9), the FCC has determined that "a principal feature of predictive dialing software is a timing function, not

---

[3]In an attempt to distinguish this case from *Gragg,* Plaintiff, without citation or basis, argues that the *Gragg* court held that the system used was not an ATDS, because there were "multiple layers" of human intervention. (DE 41, at 7.) There is nothing in the language of the opinion to support Plaintiff's interpretation. On the contrary, the Court specifically emphasized one human intervention, noting that "[t]he system is able to dial and transmit the dispatch notification only after the driver has physically pressed 'accept'; human intervention is essential." *Id.* at *3. Here, also, there were multiple layers of human intervention. Mr. Penn, just as the plaintiff in *Gragg*, provided his cell phone number. *Id.* Here a collector had to push a button to indicate they were available to participate in a collection call, just as the taxi driver in *Gragg* had to press "accept" to indicate his/her availability to pick up the customer. *Id.* In both cases, it was only *after* this human intervention that the number was dialed.

number storage or generation." 18 FCC Rcd 14014, 14092, ¶ 131. Here, where a call is only placed when a collector pushes a button to indicate they are available to be on the call, the FCC's concerns about public safety and cost shifting associated with autodialers are not implicated. (DE 38-1, at 8-9.) Plaintiff has not addressed this issue.

The undisputed facts demonstrate that the Mercury Dialer at issue does not have the attributes of an ATDS under the TCPA, and the calls to Mr. Penn's cellular telephone were not subject to the TCPA's prohibitions in 47 U.S.C. § 227(b)(1)(A)(iii).

### C. Even If NRA's Dialer Is Deemed To Be An ATDS, Defendant Is Entitled To Summary Judgment, Where The Undisputed Facts Show That Plaintiff Provided His Cellular Telephone Number to His Creditor

The TCPA prohibits "any person . . . [from] . . . mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service, . . . or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA does not define "prior express consent." *See Emanuel v. Los Angeles Lakers, Inc.*, 2013 WL 1719035, *2 (C.D.Cal. April 18, 2013), *citing In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd 8752, 8759, ¶ 29 (Oct. 16, 1992).

As discussed in Defendant's Opening Brief, DE 38-1, at 11-13, the FCC has addressed the meaning of "prior express consent" and determined that "persons who knowingly release their phone numbers have in effect given their information or permission to be called at the number which they have given, *absent instructions to the contrary.*" 23 F.C.C.R. 559, 564-65, ¶ 10 ("2008 FCC Ruling") (emphasis added.) "The FCC thus declared that 'autodialed . . . calls to wireless numbers provided by the called party in connection with an existing debt . . . are

permissible.'" *Chavez v. Advantage Group,* 959 F.Supp.2d 1279, 1281 (D.Colo. 2013), *citing 2008 FCC Ruling*, at 564, ¶10.

Plaintiff does not dispute that Mr. Penn provided his cellular telephone number as part of the transaction that created the debt. (DE 41, at 1-2, *citing* Lemberg Decl., [DE 41-1], Exh. A.)[4] As Ms. Koerber's Affidavit indicates, these documents were provided to Mr. Penn at his doctor's office to complete. DE 38-2, ¶¶ 5-6. The documents are all dated on June 12, 2008. Included in these documents is a signed acknowledgment by Mr. Penn that "I understand that I am responsible for any amount not covered by insurance at the time of service. I also understand that I am responsible for collection and legal costs should it be necessary for this account to be turned over to a collection agency." (DE 38-4, bottom of p.1.)

Federal courts have consistently concluded that "when a customer provides a company his or her phone number in connection with a transaction, he or she consents to receiving calls about that transaction." *Emanuel, supra*, at *3 (C.D.Cal. Apr. 18, 2013)" *Sherman, supra,* at *3, *see also, Saunders v. NCO Fin. Sys.,* 910 F.Supp.2d 464, 467–68 (E.D.N.Y. 2012) (compiling cases); and *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012). That Mr. Penn provided the number in connection with the transaction creating the debt is undisputed, and the calls were permissible.

Numerous cases have applied this prior express consent exemption to calls made by debt collectors where, as here, the telephone number was provided to a medical care provider. *Chavez, supra*, at 1282; *Kenny v. Mercantile Adjustment Bureau, LLC*, 2013 WL 1855782, *7 (W.D.N.Y. May 1, 2013); *Pollock v. Bay Area Credit Serv., LLC,* 2009 WL 2475167, *9-*10 (S.D.Fla. Aug. 13, 2009); and *Webb v. Healthcare Revenue Recovery Group LLC,* 2014 WL

---

[4] DE 41-2, Lemberg Decl., Exh. A, contains the same records attached to and referenced in Ms. Koerber's Affidavit as DE 38-3 through 38-5.

325132, *3-*4 (N.D.Cal. Jan. 29, 2014).  These cases are more fully examined in Defendant's Opening Brief, DE 38-1, at 11-12.  *See also, Mitchem v. Illinois Collection Service*, 2012 WL 170968, *1 (N.D.Ill. Jan. 20, 2012); *Moise v. Credit Control Services, Inc.*, 950 F.Supp.2d 1251, 1252 (S.D.Fla. 2011) (provision of a cell number to a medical care provider "does constitute express consent.")

Plaintiff's reliance on and incomplete citation to another case from the Southern District of Florida, *Mais v. Gulf Coast Collection Bureau, Inc.,* 944 F.Supp.2d 1226 (S.D.Fla. 2013) *cert. granted* (June 10, 2013), is misplaced and improper.  First, this case is an outlier, and noting the conflict with other opinions, the court certified an interlocutory appeal, which is currently pending in the Eleventh Circuit.  Second, the *Mais* Court reached its decision -- holding that the express consent must have been provided directly to the debt collector and not the healthcare provider/creditor -- by expressly holding that it was not bound by the Hobbs Act, 28 U.S.C. § 2342(1), and could therefore reject the FCC's Rules interpreting the TCPA discussed above. *Id.,* at 1235-39.

> Congress has vested in the federal courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—all final orders of the Federal Communications Commission made reviewable by section 402(a) of Title 47." 28 U.S.C. § 2342(1). Concomitantly, and somewhat tautologically, section 402(a) provides that "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission ... shall be brought as provided by and in the manner prescribed" by 28 U.S.C. § 2342. 47 U.S.C. § 402(a). The *Mais* court went to great—indeed, one might say extreme—lengths to narrowly define this jurisdictional provision. The court stated, with little more than its own *ipse dixit* as support, that a proceeding under the TCPA was not an action to "enjoin, set aside, annul, or suspend" an order of the Commission. Having thus characterized the proceeding before it, the court proceeded to review the 2008 FCC Ruling, finding it not entitled to *Chevron* [*U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S. Ct. 2778, 81 L.Ed.2de 694 (1984)] deference. *See Mais,* 944 F.Supp.2d at 1235–39.

*Chavez, supra,* at 1281-1282. The *Chavez* court has been joined in its criticism of the *Mais* decision. *Murphy, supra,* 2013 WL 6865772, *8. ("This Court agrees with the *Chavez* court and joins those courts that have found that the 2008 FCC Ruling is binding on the district courts and not subject to review except by the federal courts of appeals.")

The "*Mais* court is the only federal district court to conclude that the district courts have jurisdiction to review FCC Rulings." *Chavez, supra,* at 1281. In contrast, numerous courts have concluded that they are bound to follow the FCC's 2008 ruling that provision of a cellular telephone number to a creditor is provision of prior express consent to be called at that number regarding the debt. *See Sacco v. Bank of America, N.A.*, 2012 WL 6566681, *9 (W.D.N.C. Dec. 17, 2012) ("Because the courts of appeals have been vested with exclusive jurisdiction to review the validity of FCC rulings, this Court will here accept as valid this FCC ruling, which is a 'final order' for the purposes of 28 U.S.C. § 2342 because it was the agency's final decision interpreting the 'prior express consent' provision of the TCPA and determines legal rights and obligations."); *see also, Frausto v. IC Systems, Inc.,* 2011 WL 3704249, *2 (N.D.Ill. Aug. 22, 2011) at *2; *Leckler v. Cashcall, Inc.,* 2008 WL 5000528, *2–3 (N.D.Cal. Nov. 21, 2008); *Moise v. Credit Control Services, Inc.*, 950 F.Supp.2d 1251, 1254 (S.D.Fla. 2011) (all holding that a district court may not review the 2008 FCC Ruling); and *Baird v. Sabre Inc.*, --- F.Supp.2d ---, 2014 WL 320205, *4 (C.D.Cal. Jan. 28, 2014); *Greene v. DirecTv, Inc.*, 2010 WL 4628734, at *3 (N.D.Ill. Nov. 8, 2010); *Hicks v. Client Services, Inc.,* 2009 WL 2365637, *4 (S.D.Fla. June 9, 2009) (all holding, but not in a debt collection context, that district courts may not review the FCC's interpretation of prior express consent.)

Nor do the remaining cases cited by Plaintiff support an interpretation that would eviscerate the FCC's determination that a consumer's provision of a cell phone number to a

creditor provides prior express consent for a debt collector to contact the consumer at that number. Neither decision dealt with a creditor/debtor situation. *Lusskin v. Seminole Comedy, Inc.,* 2013 WL 3147339, at *3 (S.D.Fla. June 19, 2013), was decided by the same judge who decided *Mais*, and "following its reasoning in *Mais,* the Court refused to give deference to the 1992 FCC Order under the *Chevron* test. *Lusskin,* 2013 WL 3147339 at *2–3." *Murphy, supra,* at *8. Additionally, *Lusskin* involved receipt of a non-debt related promotional message.

Plaintiff's last case, *Carlson v. Nevada Eye Care Professionals,* 2013 WL 2319143, *5, held that plaintiff there had raised a triable issue of fact as to whether her provision of her cell phone number to a medical care provider was consent to be contacted with marketing messages from that provider. As it dealt with marketing calls, not debt collection calls, it did not consider, much less take exception to the FCC's 2008 Ruling that "autodialed . . . calls to wireless numbers provided by the party in connection with an existing debt . . . are permissible" under the TCPA. 23 F.C.C.R. 559, 564, ¶ 9.

The overwhelming case law, as well as the FCC's binding interpretations of the TCPA, support the grant of summary judgment to NRA, where it is undisputed that Mr. Penn provided his cellular telephone to his creditor doctor as part of the transaction that created the debt, and thereby expressly consented to being contacted at that number regarding the debt.

## III. CONCLUSION

Defendant, as the moving party has shown that there is an absence of evidence to support Plaintiff's claim that NRA used an ATDS to call Mr. Penn's cell phone, and Plaintiff has failed to set out specific facts showing a genuine issue for trial. Even, if Plaintiff could demonstrate a genuine issue of material fact on NRA's use of an ATDS, the undisputed facts show that Plaintiff consented to the calls received from NRA when he provided his cellular telephone number to his

creditor, Harbor Hospital. Therefore, NRA is entitled to summary judgment on Plaintiff's only claim, because the calls at issue were made with his prior express consent, and are not prohibited under the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii). Defendant respectfully requests that summary judgment be entered in its favor and that this matter be dismissed with prejudice.

THE LAW OFFICES OF RONALD S. CANTER, LLC

/s/ Birgit Dachtera Stuart
Birgit Dachtera Stuart, Esquire
Bar No. 17420
200A Monroe Street, Suite 104
Rockville, Maryland 20850
Telephone: (301) 424-7490
Facsimile: (301) 424-7470
E-Mail: bstuart@roncanterllc.com
*Attorney for Defendant NRA Group, LLC*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was served upon the individual(s) listed below by Electronic Notification pursuant to ECF procedures on this 1st day of May, 2014 to:

Sergei Lemberg, Esquire
LEMBERG AND ASSOCIATES, LLC
1100 Summer Street, Third Floor
Stamford, Connecticut 06905
E-Mail: slemberg@lemberglaw.com
*Attorney for Plaintiff*

/s/ Birgit Dachtera Stuart
Birgit Dachtera Stuart , Esquire
*Attorney for Defendant NRA Group, LLC*