IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HERBERT PENN,  *

   Plaintiff  *

v.  *  CIVIL NO. JKB-13-0785

NRA GROUP, LLC, *et al.*,  *

   Defendants  *

\* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM</u>**

*I. Background*

Plaintiff Herbert Penn filed this suit claiming a violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, by Defendant NRA Group, LLC ("NRA"), when NRA called him on his cell phone to collect on a debt for medical services. (2d Am. Compl., ECF No. 15.) Although the suit was pleaded as a class action, Penn has informed the Court that he does not plan to move for class certification. (Joint Status Report ¶ B, ECF No. 36.) Now pending before the Court is NRA's motion for summary judgment (ECF No. 38), which has been briefed (ECF Nos. 41, 44, 51) and is ripe for decision. Also pending is Penn's motion to strike the affidavit of Charlene Sarver as an exhibit to NRA's motion for summary judgment. (ECF No. 42.) It was opposed by NRA (ECF No. 48), but no reply was filed. It, too, is ready for decision. No hearing is necessary. Local Rule 105.6 (D. Md. 2014).

Briefly, NRA makes two arguments. First, it asserts Penn has failed to prove that NRA's telephone dialer fits within the statutory definition of an automatic telephone dialing system ("ATDS") and, therefore, has failed to prove an element of his case. In addition, NRA contends

it has established the affirmative defense of Penn's consent to be called on his cell phone for the collection of the debt at issue. (Def.'s Mot. Summ. J. Supp. Mem. 2.) Because the Court concludes NRA's second contention is supported by the record evidence, it is unnecessary to address the first argument; the Court will assume *arguendo* that Penn can meet his burden of proof on that point. Since the disagreement between the parties over the affidavit only affects the first issue of whether NRA used an ATDS, Penn's motion to strike will be found moot.

## II. *Statutory and Regulatory Framework*

The TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The Federal Communications Commission ("FCC") in 1992 interpreted the phrase "prior express consent" to embrace the telephone subscriber's provision of his or her telephone number to a business. Thus, "any telephone subscriber who releases his or her telephone number has, in effect, given prior express consent to be called by the entity to which the number was released." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 FCC Rcd. 8752, 8769, ¶ 30 (1992).

In 2008, the FCC addressed the question of whether a debt collection company could also claim the "prior express consent" defense. It concluded that "the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling*, Declaratory Ruling, 23 FCC Rcd. 559,

564 ¶ 9 (2008) ("2008 Ruling"). The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id.* at 564-65, ¶ 10. Further, the FCC determined that "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." *Id.* Although the FCC revised its TCPA rules in 2012 to require prior express *written* consent for telemarketing calls using an ATDS, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1838, ¶ 20 (2012) ("2012 FCC Order"), the FCC has not revised its statement in its 2008 Ruling that "calls solely for the purpose of debt collection . . . do not constitute telemarketing," *see* 2008 Ruling, 23 FCC Rcd. at 565, ¶ 11. *See also* 2012 FCC Order, 27 FCC Rcd. at 1841, ¶ 28 (noting FCC was "maintain[ing] the existing consent rules for *non-telemarketing informational* calls").

### III. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to

be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## IV. Undisputed Facts

On June 12, 2008, Penn registered as a patient at Harbor Hospital, Baltimore, Maryland. (Registration Form, 6/12/08, Ex. B to Koerber Aff., Def.'s Mot. Summ. J., ECF No. 38-4.) He filled out several forms and provided a home telephone number on three of these. (Koerber Aff., Ex. A, B.) On one form, the "Initial Health Assessment," he also provided his cell phone number. (*Id.* Ex. A, ECF No. 38-3.) On another form, the "Registration Summary," his cell phone number was shown as a work telephone number. (*Id.* Ex. C, p. 2, ECF No. 38-5.)

On March 30, 2012, Harbor Hospital referred Penn's unpaid medical bill to NRA for collection. (Chille Aff. ¶ 2, ECF No. 38-7; Fact Sheet, Ex. A, ECF No. 38-8.) Based on a ten-year working relationship between Harbor Hospital and NRA, "NRA is aware that Harbor only obtains patient contact information directly from patients and has found Harbor's records to be accurate and reliable." (Chille Aff. ¶¶ 4, 5.) Neither the hospital nor the physician at the hospital who examined and treated Penn searches outside sources for contact numbers for patients. (Koerber Aff. ¶ 9.) The collection file transmitted electronically from Harbor Hospital included both telephone numbers provided by Penn in his patient forms. (Chille Aff. ¶ 8.) NRA put both numbers through a "cell phone scrub," determined that the work number on the

4

Registration Summary was a cell phone number, and so noted that fact in the collection file. (*Id.* ¶¶ 9, 10.) NRA's policy is only to call cell phone numbers received by it directly from the creditor. (*Id.* ¶ 15.)

From October 10, 2012, through February 28, 2013, NRA called Penn's cell phone number 32 times. (Def.'s Answers to Interrog. 8, Pl.'s Opp'n, Ex. E, ECF No. 41-6.) The collection account was closed and returned to Harbor Hospital the same day Penn served this lawsuit on NRA. (Fact Sheet, Chille Aff., Ex. B, Def.'s Mot. Summ. J., ECF No. 38-9; Summons Returned Executed, ECF No. 3.)

*V. Analysis*

The undisputed facts show that Penn's provision of his cell phone number to Harbor Hospital was in relation to the medical services received by Penn in 2008—services for which he left a balance owing. The facts are also clear that Harbor Hospital provided Penn's cell phone number to NRA as a contact number for him in reference to his unpaid debt. Under the FCC's interpretations of the TCPA, NRA lawfully called Penn's cell phone number to collect his debt to the hospital. Penn presents no evidence to support his contention that NRA did not have his prior express consent to call his cell phone number in an effort to collect on the debt referred to NRA by Harbor Hospital. (Pl.'s Opp'n 9-10.) He says he did not provide that number to NRA but only provided it to the doctor from whom he sought treatment. (*Id.* at 9.) He ignores the FCC's opinions to the effect that providing a cell phone number to the creditor is the same as providing it to a third-party collector working on behalf of the creditor. Instead, he relies upon a lone district court decision from the Southern District of Florida to the effect that the FCC's 2008 Ruling does not apply to the medical care setting and also to the effect that prior express consent

5

to the medical provider is inapplicable as to automated debt collection calls. *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226 (S.D. Fla.), *certif. interloc. app. granted* (2013).

The *Mais* decision has been justifiably criticized because the district court failed to recognize the exclusive statutory authority given by Congress to the courts of appeals to review FCC orders. *See Chavez v. Advantage Group*, 959 F. Supp. 2d 1279, 1282 (D. Colo. 2013) (citing 28 U.S.C. § 2342(1), 47 U.S.C. § 402(a)). Thus, instead of deferring to the FCC's rulings—in this case, the ones defining what constitutes prior express consent under the TCPA, the *Mais* court created distinctions under the TCPA that are contrary to the FCC's rulings. This Court agrees with the *Chavez* court that the district courts have no authority to annul the effect of FCC rulings as the *Mais* court has purported to do.[1] *See also Hudson v. Sharp Healthcare*, Civ. No. 13-1807-MMA (NLS), 2014 WL 2892290, at *5 (S.D. Cal. June 25, 2014) (rejecting *Mais* as outlier decision and treating FCC orders as binding on district courts); *Murphy v. DCI Biologicals Orlando*, Civ. No 12-1459-Orl-36KRS, 2013 WL 6865772, at *8 (M.D. Fla. Dec. 31, 2013) (agreeing with *Chavez* and finding 2008 Ruling binding on district courts); *Sacco v. Bank of America, N.A.*, Civ. No. 12-006-RLV-DCK, 2012 WL 6566681, at *9 (W.D.N.C. Dec. 17, 2012) ("Because the courts of appeals have been vested with exclusive jurisdiction to review the validity of FCC rulings, this Court will here accept as valid [the 2008 Ruling], which is a 'final order' for the purposes of 28 U.S.C. § 2342 because it was the agency's final decision interpreting the 'prior express consent' provision of the TCPA and determines legal rights and obligations."); *Moise v. Credit Control Servs., Inc.*, 950 F. Supp. 2d 1251, 1254 (S.D. Fla. 2011) (FCC's 2008 Ruling unreviewable by district courts); *Frausto v. IC System, Inc.*, Civ. No. 10-

---

[1] *Chavez*'s interpretation of the *Mais* decision is consistent with the FCC's position in its amicus brief filed in the Eleventh Circuit, No. 13-14008 (Dec. 20, 2013), seeking to overturn *Mais*.

1363, 2011 WL 3704249, at *2 (N.D. Ill. Aug. 22, 2011) (same); *Leckler v. Cashcall, Inc.*, Civ. No. 07-04002-SI, 2008 WL 5000528, at *2-3 (N.D. Cal. Nov. 21, 2008) (same).

Although Penn cites two other cases, neither is apposite to the case now before the Court. The case of *Lusskin v. Seminole Comedy, Inc.*, Civ. No. 12-62173, 2013 WL 3147339 (S.D. Fla. June 19, 2013), was decided by the same judge who decided *Mais*; consistent with *Mais*, the judge refused to give deference to the FCC's 1992 Order. *Id.* at *2-3. For the same reasons this Court rejected *Mais*, the Court rejects this later iteration of *Mais*. *See Van Patten v. Vertical Fitness Group, LLC*, Civ. No. 12-1614-LAB (MDD), 2014 WL 2116602, at *6 (S.D. Cal. May 20, 2014) (rejecting *Lusskin*'s lack of deference to FCC rulings). The other case cited by Penn, *Carlson v. Nevada Eye Care Prof'ls*, Civ. No. 13-364-RCJ-PAL, 2013 WL 2319143 (D. Nev. May 28, 2013), pertained to telemarketing calls, not debt collection calls; notably, it did not undertake any review of FCC rulings but, instead, simply focused on the facts pertaining to whether the plaintiff had given consent to be contacted for marketing purposes. *Id.* at *5.

In *Chavez*, the court held that an individual's providing a cell phone number to a medical provider constitutes prior express consent to receive calls at that number from the medical provider's debt collector. 959 F. Supp. 2d at 1281. That holding is consistent with the FCC's rulings. *Accord Kenny v. Mercantile Adjustment Bureau*, Civ. No. 10-1010, 2013 WL 1855782, at *7 (W.D.N.Y. May 1, 2013); *Mitchem v. Illinois Collection Serv., Inc.*, Civ. No. 09-7274, 2012 WL 170968, at *2 (N.D. Ill. Jan. 20, 2012); *Pollock v. Bay Area Credit Serv., LLC*, Civ. No. 08-61101, 2009 WL 2475167, *9-10 (S.D. Fla. Aug. 13, 2009). Likewise, here, the Court holds that Penn's provision of his cell phone number to Harbor Hospital in conjunction with his patient registration in 2008 constituted his prior express consent for the hospital or a debt collector acting on behalf of the hospital to call him on his cell phone number for the purpose of

7

collecting the debt arising from that registration. Therefore, NRA's calls to him on his cell phone number were lawfully made.

*VI. Conclusion*

NRA has established that no genuine dispute of material fact exists and that it is entitled to judgment as a matter of law on Penn's claim that NRA violated the TCPA. A separate order will reflect the rulings made herein.

DATED this 1st day of July, 2014.

BY THE COURT:

/s/
James K. Bredar
United States District Judge